IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AML IP, LLC, | Case No. 4:22-cv-00214 |
| Plaintiff, | LEAD CASE |
| v. | JURY TRIAL DEMANDED |
| HALLMARK CARDS, INC., HALLMARK LICENSING, LLC, and AMY'S HALLMARK, | |
| Defendants. | |
| AML IP, LLC, | |
| Plaintiff, | |
| v. | Case No. 4:22-cv-00216 |
| BATH & BODY WORKS DIRECT, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

**DEFENDANT BATH & BODY WORKS DIRECT, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE AND FAILURE TO STATE A CLAIM**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE ISSUES ........................................................................ 2

III. BACKGROUND FACTS ................................................................................... 2

     A.   Venue ..................................................................................................... 2

     B.   The Patent-in-Suit ................................................................................. 3

IV. LEGAL STANDARD AND APPLICABLE LAW ........................................... 5

     A.   Legal Standard and Applicable Law on Venue..................................... 5

     B.   Legal Standard and Applicable Law on Patent Eligibility and Failure to State a Claim ....................................................................................... 6

V.  ARGUMENT ..................................................................................................... 8

     A.   The Eastern District of Texas is Not a Proper Venue under 28 U.S.C. § 1400(b). ............................................................................................... 8

          1.   Bath & Body Works Direct does not reside in this judicial district. ............ 8

          2.   Bath & Body Works Direct has not committed "acts of infringement" in the Eastern District of Texas................................................................... 8

     B.   The Claims of the '979 Patent are invalid under 35 U.S.C. § 101. ..................... 11

          1.   Alice Step 1: Claim 1 is directed to the abstract idea of facilitating economic transactions between two parties using a third-party intermediary. ................................................................................. 11

          2.   Alice Step 2: The claims do not contain an inventive concept sufficient to confer patent eligibility........................................................... 16

          3.   The dependent claims of the '979 Patent do not alter the analysis. ............ 18

          4.   There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage................................ 18

VI. CONCLUSION ............................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)................................................................................ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012).......................................................................7

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)...........................................................7, 18, 19

*In re BigCommerce, Inc.*,
890 F.3d 978 (Fed. Cir. 2018)..........................................................................6

*Bilski v. Kappos*,
561 U.S. 593 (2010).........................................................................................6

*BMC Res., Inc. v. Paymentech, L.P.*,
498 F.3d 1373 (Fed. Cir. 2007)......................................................................10

*Boom! Payments, Inc. v. Stripe, Inc.*,
839 F. App'x 528 (Fed. Cir. 2021) .............................................................1, 14

*Bozeman Financial LLC v. Federal Reserve Bank of Atlanta*
955 F.3d 971, 978 (Fed. Cir. 2020).................................................................17

*Bridge & Post, Inc. v. Verizon Communs., Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ...................................................................7

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)................................................................15, 17

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017).........................................................................6

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*
880 F.3d 1356, 1362 (Fed. Cir. 2018)..............................................................15

*Credit Acceptance Corp. v. Westlake Services*,
859 F.3d 1044 (Fed. Cir. 2017)..............................................................1, 14, 16

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ....................................................................6

*cxLoyalty, Inc. v. Martiz Holdings, Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021)...........................................................11, 12

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).............................................................15

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012)...............................................................12

*Diamond v. Chakrabarty*,
  447 U.S. 303 (1980)............................................................................2, 7

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)...........................................................15, 16

*Fast 101 Pty. Ltd. v. CitiGroup Inc.*,
  834 Fed. App'x 591 (Fed. Cir. 2020)........................................................12

*Finjan, Inc. v. Blue Coat System, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018).................................................................8

*Finnavations LLC v. Payoneer, Inc.*,
  No. 1:18-cv-00444-RGA, 2019 WL 1236358 (D. Del. Mar. 18, 2019) ...................1

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)...............................................................................10

*Integrated Tech. Sys., Inc. v. First Internet Bank of Ind.*,
  No. 2:16-cv-00417-JRG-RSP, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017) ..................9, 12

*L & H Concepts LLC v. Schmidt*,
  No. 6:07 CV 65, 2007 WL 4165259 (E.D. Tex. Nov. 20, 2007)...............................6

*LendingTree, LLC v. Zillow, Inc.*,
  656 Fed. App'x 991 (Fed. Cir. 2016).........................................................12

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005)...............................................................9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)...............................................................15

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)............................................................7, 16

*Seven Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018) (Gilstrap, J.)..................................................8

*Solutran, Inc. v. Elavon, Inc.*,
   931 F.3d 1161 (Fed. Cir. 2019)................................................................14, 15, 17

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017).........................................................................5, 6, 8

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...........................................7

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (*en banc*) ..................................................6

*Westech Aerosol Corp. v. 3M Co.*,
   927 F.3d 1378 (Fed. Cir. 2019)..............................................................10

*Western Express Bancshares, LLC v. Green Dot Corp.*,
   816 Fed. App'x 485 (Fed. Cir. 2020)........................................................15

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)..............................................................6

## Statutes

28 U.S.C. § 1400............................................................................. *passim*

28 U.S.C. § 1406(a) .......................................................................6, 11

35 U.S.C. § 101 .......................................................................1, 6, 7, 11

35 U.S.C. §271.......................................................................8, 9, 10

## Other Authorities

Fed. R. Civ. P. 12.......................................................................1, 6, 18

## I.    INTRODUCTION

Defendant Bath & Body Works Direct, Inc. ("Bath & Body Works Direct") does not reside in Texas, nor has AML IP plausibly alleged that Bath & Body Works Direct has performed any acts of infringement in this District to establish venue here. The claims against Bath & Body Works Direct should therefore be dismissed pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue under 28 U.S.C. §§ 1400(b) and 1404.

Even if there were venue here, the case should nevertheless be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the claims are not eligible for patent protection under 35 U.S.C. § 101. Indeed, the assertion of a patent directed to a similar abstract idea provided grounds for Judge Andrews of the District of Delaware to find a case exceptional and award attorneys' fees because patents directed to fundamental business practices (and nothing more), like the patent invalidated in *Alice*, are clearly ineligible:

> There is no question that the '755 Patent is patent ineligible under the Federal Circuit's current precedent. In fact, the Patent is reminiscent of patents which courts were invalidating in the immediate wake of *Alice*, five years ago. Since *Alice*, the law of patent eligibility has perhaps become unpredictable and unclear on the fringes. ***But one thing has remained true: patents which look like Alice are ineligible.***

*Finnavations LLC v. Payoneer, Inc.*, No. 1:18-cv-00444-RGA, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019) (emphasis added). The patent here, which is directed to facilitating economic transactions using a third-party intermediary, looks like *Alice* and the other patents invalidated by federal courts since *Alice*, including *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021) and *Credit Acceptance Corp. v. Westlake Services*, 859 F.3d 1044 (Fed. Cir. 2017). It is therefore clearly ineligible and presents the kind of ineligibility question that this Court can and should address at the Rule 12 stage.

## II.     STATEMENT OF THE ISSUES

1.     <u>Improper Venue</u>: Venue in patent cases is governed solely by 28 U.S.C. § 1400(b), which establishes that "[a]ny civil action for patent infringement may be brought in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of [alleged] infringement and has a regular and established place of business." Bath & Body Works Direct does not reside in this judicial district. Additionally, AML IP has not alleged that Bath & Body Works Direct has committed acts of infringement in that location. Should the Court therefore dismiss AML IP's Complaint against Bath & Body Works Direct for improper venue?

2.     <u>Failure to State a Claim</u>: Section 101 sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter," meanwhile, precedents from the U.S. Supreme Court recognizes three exemptions to patent eligibility: "laws of nature, physical phenomenal, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). AML IP asserts the '979 Patent, which is directed to an abstract idea and does not recite an inventive concept that amounts to significantly more than a patent upon the abstract idea itself. Should the Court therefore find the technology in '979 Patent ineligible for patent protection, and therefore dismiss AML IP's Complaint against Bath & Body Works Direct for failure to state a claim upon which relief can be granted?

## III.     BACKGROUND FACTS

### A.     Venue

On March 18, 2022, AML IP filed a complaint against Bath & Body Works, LLC, alleging infringement of U.S. Pat. No. 6,876,979 (the "'979 Patent"). (Dkt. No. 1.) AML IP amended its complaint on May 11, 2022, naming Bath & Body Works Direct, Inc. as the sole defendant. (Dkt. No. 16.) AML IP alleges that Bath & Body Works Direct's website (the "Accused Instrumentality") infringes one or more of the claims of the '979 Patent.

Bath & Body Works Direct is not incorporated in the Eastern District of Texas. (Ex. A, Schwieterman Decl. at ¶ 3.) Bath & Body Works Direct maintains a principal place of business in Ohio. (*Id.*) The Allen address that Plaintiff alleges as Bath & Body Works Direct's regular and established place of business is a retail storefront that is not operated by Bath & Body Works Direct, and Bath & Body Works Direct does not have any offices with corporate functions at that location. (*Id.* at ¶ 5.)

Bath & Body Works Direct's operations relevant to the business and financial aspects relating to the Accused Instrumentality primarily occur in its Ohio offices. (*Id.* at ¶ 6.) Thus, the Bath & Body Works Direct employees most knowledgeable about business and financial aspects relating to the Accused Instrumentality are primarily located in or near the Ohio area. (*Id.* at ¶ 7.) Additionally, the majority of potentially relevant information, data, and documents, including the computer source code and technical documents for the Accused Instrumentality, is generated in the Columbus headquarters and maintained on third-party servers located outside the Eastern District of Texas. (*Id.* at ¶ 8.)

The allegations of in the Complaint are directed at checkout services and their alleged interaction with Bath & Body Works Direct's website, www.bathandbodyworks.com. (*See* Ex. A to Compl., Dkt. No. 1-1.) Bath & Body Works Direct does not own, operate, lease, or control any data centers that operate www.bathandbodyworks.com in the Eastern District of Texas. (Schwieterman Decl. at ¶ 9.)

### B.    The Patent-in-Suit

The '979 Patent is directed to a method of "electronic commerce" in which an intermediary "may be used to facilitate interactions between service providers," supporting users and vendors. '979 Patent, Abstract. The '979 Patent explains that a user "may establish an account through one service provider and may use that account to shop at vendor web sites that are associated with

3

different service providers." *Id.* at 1:39-42. "A bridge computer may be used to support purchase transactions and to facilitate interactions between different service providers." *Id.* at 1:42-44. Thus, the bridge computer acts "as a clearinghouse for transactions, so that rival service providers need not interact directly with one another." *Id.* at 1:47-49. "[T]he bridge computer may be used to debit the user's account at the appropriate service provider" when the user makes a purchase and credit "the account of the vendor from which the user is purchasing a product" at the appropriate service provider. *Id.* at 1:50-56.

Claim 1 is the only independent claim of the '979 Patent. Claims 2-13 depend from claim 1. Claim 1 is thus representative of the thirteen claims and recites as follows:

> 1. A method for using an electronic commerce system having a bridge computer to allow a user at a user device to make a product purchase at a purchase price from a given vendor having a web site provided by a vendor computer over a communications network, wherein the vendor is associated with at least one of a plurality of service providers wherein each of the plurality of service providers has a service provider computer, and wherein the user has a user account maintained by at least one of the plurality of service providers, the method comprising:

> debiting the user's account by the purchase price when the user purchases the product from the given vendor;

> determining from among the plurality of service providers, using the bridge computer, whether the given vendor is associated with the same service provider with which the user's account is maintained or is associated with a different service provider; and

> if the service provider with which the user's account is maintained is the same as the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the user's account at that same service provider and, if the service provider with which the user's account is maintained is different from the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the service provider with which the vendor is associated and using the bridge computer to reimburse that service provider with the purchase price using funds from the user's account.

*Id.* at 10:24-54 (claim 1); *see also* Dkt. No. 1-1 (AML's chart identifying purported infringement by Bath & Body Works Direct for claim 1 only).

4

Claim 1 describes the facilitation of the purchase of an item by a user from a vendor using an intermediary to debit and credit the user and vendor accounts. The recited steps of claim 1 take place in a generic computer environment. Figure 1 of the '979 Patent is a "block diagram of an illustrative system having a bridge computer in accordance with the present invention." *Id.* at 2:20-22. This system includes "communications network 12," which is "based on the Internet, local area networks, wide area networks, private networks, or any other suitable networks that support communications between different parties located at respective computers or other suitable electronic devices." *Id.* at 2:57-63. User devices in the system include "desktop or notebook personal computers, personal digital assistants, wireless telephones, or any other suitable user devices," and service providers and vendors use "computers." *Id.* at 2:64-3:26. The "bridge compute 20" includes "database 22," which may maintain "[i]nformation on the amount of funds stored in the user accounts associated with various service providers," as well as "[i]nformation on the vendors that have associated with a particular service provider." *Id.* at 3:48-4:4, 4:15-22.

The dependent claims of the '979 Patent provide more details regarding the functions of the bridge computer, such as using the clearinghouse to reimburse service charges or collect service fees, but do not change the basic concepts or provide an inventive concept related to clearinghouses for financial transactions. The dependent claims simply reinforce the core abstract idea of facilitating economic transactions between two parties using a third-party intermediary.

## IV.   LEGAL STANDARD AND APPLICABLE LAW

### A.   Legal Standard and Applicable Law on Venue

In a patent case, venue is proper only "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). When applied to domestic corporations, the first prong of

section §1400(b) generally "refers [] to the State of incorporation." *TC Heartland* at 1521. Only "the judicial district where the principal place of business is located" is the district in which it "resides" for venue purposes. *In re BigCommerce, Inc.*, 890 F.3d 978, 982 (Fed. Cir. 2018). The second prong of Section 1400(b) requires that "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). All three factors of the second prong must be met in order for venue to be proper in a specific district. *Id.*

Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of proving whether venue is appropriate shifts to plaintiff. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *L & H Concepts LLC v. Schmidt*, No. 6:07 CV 65, 2007 WL 4165259, at *1 (E.D. Tex. Nov. 20, 2007) (citing *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)). If venue is improper under Section 1400(b), the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*).

**B.    Legal Standard and Applicable Law on Patent Eligibility and Failure to State a Claim**

To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiffs grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). Although factual allegations are taken as true, legal conclusions are given no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (held that the tenet that allegations are taken as true in a complaint "is inapplicable to legal conclusions.")

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S.

593, 602 (2010). Accordingly, the 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). Similarly, while patent eligibility "may contain disputes over underlying facts" (see *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), courts are not "required to accept legal conclusions as true, even if couched as factual allegations." *Bridge & Post, Inc. v. Verizon Communs., Inc.*, 778 F. App'x 882, 894 (Fed. Cir. 2019).

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. at 217.

Courts conduct the abstract idea inquiry by analyzing the "focus" of the claim, i.e., its "character as a whole," to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether

7

the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool." *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)).

## V.   ARGUMENT

### A.   The Eastern District of Texas is Not a Proper Venue under 28 U.S.C. § 1400(b).

#### 1.   *Bath & Body Works Direct does not reside in this judicial district.*

Bath & Body Works Direct does not reside in the Eastern District of Texas for the purposes of the first prong of §1400(b). In its Complaint, AML IP does not allege that Bath & Body Works Direct resides in this District or maintains a principal place of business in this District. For the purposes of venue under 28 U.S.C. §1400(b), Bath & Body Works Direct "resides" only in Ohio, where Bath & Body Works Direct maintains its principal place of business; not in this judicial district.

#### 2.   *Bath & Body Works Direct has not committed "acts of infringement" in the Eastern District of Texas.*

Because Bath & Body Works Direct does not reside in the Eastern District of Texas, venue would only be proper if it *both* "committed acts of infringement" *and* "has a regular and established business" in the district. 28 U.S.C. § 1400(b); *TC Heartland*, 137 S. Ct. 1514 (2017). Bath & Body Works Direct does not operate retail stores in this District, and it has not committed acts of infringement here. "The acts of infringement referred to in the patent venue statute are those acts defined by the statute dealing with infringement." *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 942 (E.D. Tex. 2018) (Gilstrap, J.). That is, the acts of infringement pertinent to this case are acts of direct or indirect infringement as set forth in 35 U.S.C. § 271(a), (b), or (c).

As explained below, Bath & Body Works Direct has not "committed" any direct or indirect acts of infringement in this District.

First, Bath & Body Works Direct has not directly infringed any method claims of the '979 Patent in this District. Asserted Claim 1 and its dependents are method claims. The place where a party commits direct infringement of a method claim under 35 U.S.C. § 271(a) is the place where a party performs all the steps of the accused method. *See NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1317-18 (Fed. Cir. 2005) (holding that "[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized" and that a process "cannot be used within" a place "unless each of the steps is performed within" that place).

Claim 1 of the '979 Patent recites a method of "using an electronic commerce system having a bridge computer," including steps such as "debiting the user's account," "determining . . . whether the give vendor is associated with . . . service provider," and "crediting the given vendor by the purchase price." '979 Patent, Cl. 1; *see also* Dkt. No.1-1.

As evidenced by Ex. A to the original Complaint, which includes only screenshots from www.bathandbodyworks.com, the alleged conduct is the operation by the servers and computers behind the www.bathandbodyworks.com "web site." (Dkt. No. 1-1.) For example, the Ex. A to the original Complaint alleges that Bath & Body Works Direct "provides a web site for electronic commerce that allows a user to make a product purchase."  (*Id.* at 5.) But Bath & Body Works Direct does not own, operate, lease, or control any data centers for the accused website or databases in this District. (*See* Schwieterman Decl. at ¶ 9.) In other words, AML IP has failed to show that direct infringement of Claim 1 or its dependents by Bath & Body Works Direct—i.e., its performance of ***any*** claim step—was committed in this District.

9

<u>Second,</u> AML IP has not alleged any acts of indirect infringement by Bath & Body Works Direct as being committed in this District. At best, with respect to indirect infringement, AML IP alleges that Bath & Body Works Direct has "encouraged or instructed … its customers and/or customers of its related companies … to cause infringement." (Dkt. No. 16, at ¶¶ 11–12.) But an allegation of indirect infringement requires an allegation of predicate direct infringement. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007). The only allegation of actual direct infringement is that due to conduct by Bath & Body Works Direct. AML IP specifically explains:

> [Bath & Body Works Direct] maintains, operates, and administers payment products and services that facilitate purchases from a user using a bridge computer that infringes one or more of claims 1-13 of the '979 patent, literally or under the doctrine of equivalents. ***Defendant puts the inventions claimed by the '979 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service***. Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

(Dkt. No. 16, ¶ 9 (emphasis added).)

This is nonsensical. A party cannot indirectly infringe by inducing or contributing to that parties' own direct infringement. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) (clarifying that 35 U.S.C. §271 is interpreted as either "the inducer must persuade *another* to engage in conduct that the inducer knows is infringement" or "the inducer lead *another* to engage in conduct that happens to amount to infringement") (emphasis added). AML IP cannot manufacture venue in this District by alleging facts that, on their face, are contradictory and do not state a plausible and legally cognizant claim for indirect infringement. *See Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019).

Accordingly, venue is not proper in this District under the second prong of §1400(b)

because Bath & Body Works Direct has not "committed acts of infringement *in this district*." AML IP's Complaint against Bath & Body Works Direct should be dismissed under 28 U.S.C. § 1406(a).

**B.      The Claims of the '979 Patent are invalid under 35 U.S.C. § 101.**

Even if venue were proper (it is not), AML IP does not state a claim because the claims of the '979 Patent are ineligible under 35 U.S.C. § 101.

> **1.   *Alice* Step 1: Claim 1 is directed to the abstract idea of facilitating economic transactions between two parties using a third-party intermediary.**

Claim 1 of the '979 Patent is directed to the unpatentable, abstract idea of facilitating economic transactions between two parties using a third-party intermediary. The abstract, specification, and claims of the patent describe the purported inventive method as using a "bridge computer" to "facilitate interactions between service providers." The claims here are directed to organizing human activity and involve only fundamental economic practices. Accordingly, the claims fall squarely into the bucket of abstract ideas deemed patent ineligible by the Supreme Court in *Alice*, the Federal Circuit, and district courts.

For example, the claimed method of the '979 Patent can be analogized to the use of a money exchanger ("bridge computer") to facilitate a transaction between an individual ("user") with U.S. dollars (via "service provider with which the user's account is maintained") and a store ("vendor") that only accepts Canadian dollars (via "service provider with which the vendor is associated"). "Humans have long intermediated these very transactions"—"facilitating, or brokering, a commercial transaction (i.e., the sale and purchase of goods and services) between a purchaser . . . and a seller"—"by collecting and relaying the very same information." *cxLoyalty, Inc. v. Martiz Holdings, Inc.*, 986 F.3d 1367, 1376–1377 (Fed. Cir. 2021). In the claims of the '979 Patent, the bridge computer "takes the place of the human acting as an intermediary . . . to complete

the transaction." *Id.*

Courts have routinely recognized that the use of a "clearinghouse" or "intermediary" in transactions is a longstanding economic practice. *See Alice*, 573 U.S. at 2356 (claims using an intermediary are directed to "a fundamental economic practice long prevalent in our system of commerce" and "[t]he use of a third-party intermediary (or 'clearing house') is also a building block of the modern economy"); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012) ("The notion of using a clearinghouse generally and using a clearinghouse specifically to apply for car loans, like the relationship between hedging and hedging in the energy market in *Bilski II*, is of no consequence without more."); *Fast 101 Pty. Ltd. v. CitiGroup Inc.*, 834 Fed. App'x 591, 593-94 (Fed. Cir. 2020) ("[L]ike *Alice*, these claims describe a method of exchanging financial obligations between two parties by the use of a third-party intermediary."); *LendingTree, LLC v. Zillow, Inc.*, 656 Fed. App'x 991, 996 (Fed. Cir. 2016) (finding representative claim 1 "directed to an abstract idea; namely, a loan-application clearinghouse"); *Integrated Tech. Sys., Inc. v. First Internet Bank of Ind.*, No. 2:16-cv-00417-JRG-RSP, 2017 WL 631195, at *4 (E.D. Tex. Jan. 30, 2017) (finding claims directed to "a way in which funds can be simultaneously transferred between accounts without a pre-established link between those accounts" using an "electronic escrow agent" as "impossible to distinguish [] from other business methods found to be abstract", including the "use of a financial intermediary that was declared abstract in *Alice*").

At bottom, the claims of the '979 Patent are just as abstract as those held invalid by the Supreme Court in *Alice*, if not more so. A comparison to claim 1 of the patent-at-issue in *Alice* highlights the abstractness of claim 1 of the '979 Patent:

| Claim 1 of the '979 Patent | Claim 1 from *Alice* | Analysis |
| --- | --- | --- |
| A method for using an electronic commerce system having a bridge computer to allow a user | A method of exchanging an obligation between parties, wherein an | Both preambles recite a method for facilitating an economic transaction—in the |

| at a user device to make a product purchase at a purchase price from a given vendor having a web site provided by a vendor computer over a communications network, wherein the vendor is associated with at least one of a plurality of service providers wherein each of the plurality of service providers has a service provider computer, and wherein the user has a user account maintained by at least one of the plurality of service providers, the method comprising: | exchange obligation is administered by a supervisory institution, and wherein at least one credit record and one debit record is maintained with an exchange institution, the method comprising: | '979 patent, a product purchase, and in *Alice*, exchange of an obligation—between two parties. |
| --- | --- | --- |
| debiting the user's account by the purchase price when the user purchases the product from the given vendor; | maintaining a shadow credit record and a shadow debit record for a party to be held independently by the supervisory institution from the exchange institution; | Both limitations recite adjustments to financial ledgers by debiting or adjusting credit/debit based on user transactions. |
| determining from among the plurality of service providers, using the bridge computer, whether the given vendor is associated with the same service provider with which the user's account is maintained or is associated with a different service provider; and | for every transaction resulting in an exchange obligation, the supervisory institution electronically adjusting said shadow credit record and/or shadow debit record, allowing only those transactions that do not result in a value of said shadow debit record being less than a value of said shadow credit record; and | In the '979 patent, using the database maintained by the bridge computer, it is determined which service providers are associated with the user and vendor accounts. In *Alice*, the intermediary supervisory institution maintains records of shadow credit/debit and adjusts such credit/debit based on a party's transactions. |
| if the service provider with which the user's account is maintained is the same as the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the user's account at that same service provider and, if the service provider with which the user's account is maintained is different | at the end of a period of time, the supervisory institution providing an instruction to the exchange institution to credit and/or debit in accordance with said adjustments of said allowed transactions, wherein said instruction being an irrevocable, time | The intermediary—the bridge computer and the supervisory institution—facilitates the economic transaction of debiting a user account and crediting a vendor account and sending instructions to credit/debit based on a party's transactions. |

| from the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the service provider with which the vendor is associated and using the bridge computer to reimburse that service provider with the purchase price using funds from the user's account. | invariant obligation placed on the exchange institution. | |
|---|---|---|

Since *Alice*, the Federal Circuit has found claims highly similar to the '979 patent claims directed to fundamental business and economic practices ineligible. Recently, the Federal Circuit found that patents reciting an "Internet-based system, such as an online marketplace, that facilitates payments between buyers and sellers" and requiring verification of consummation of a transaction by a third-party before releasing payment are directed to nothing more than the abstract idea of payment escrow. *Boom! Payments*, 839 F. App'x at 532 ("Here, payment is held by the third-party Internet-based computer system and released to the seller only upon the fulfillment of a condition—specifically, upon receiving confirmation that the items sold have been transferred to the buyer.") The Federal Circuit found the claims in *Boom! Payments* to be "reminiscent of those at issue in *Alice*" and directed to an abstract idea. *Id.*

Similarly, in *Credit Acceptance*, the Federal Circuit held claims reciting "a system for maintaining a database of information about the items in a dealer's inventory, obtaining financial information about a customer from a user" directed to the abstract idea of "processing an application for financing a purchase." 859 F.3d at 1054–56. The Federal Circuit found "no meaningful distinction between this type of financial industry practice and 'the concept of intermediated settlement' held to be abstract in Alice" as both are "a fundamental economic practice long prevalent in our system of commerce." *Id.* at 1054–55 (quoting *Alice*, 573 U.S. at 219). Likewise, in *Solutran, Inc. v. Elavon, Inc.*, the Federal Circuit held that claims reciting a

14

method for processing electronic checks, including crediting a merchant's account, to be a "long-standing commercial practice" and thus directed to an abstract idea. 931 F.3d 1161, 1166–67 (Fed. Cir. 2019). Similarly, methods of transferring funds "between a customer and recipient through an automated net-worked method" are "'fundamental economic practice[s] long prevalent in our system of commerce' and, as such, [are] patent ineligible abstract idea[s]." *Western Express Bancshares, LLC v. Green Dot Corp.*, 816 Fed. App'x 485, 486–87 (Fed. Cir. 2020) (quoting *Alice*, 573 U.S. at 219).

Applying the Internet and computer components to the commercial practice of facilitating a transaction, such as a purchase, does not preclude a finding that the '979 Patent is abstract. *See, e.g.*, *Alice*, 573 U.S. at 218–22; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370, 1376–77 (Fed. Cir. 2011) (method for verifying the validity of credit card transactions over the Internet to prevent fraud was directed to an abstract idea); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351–52, 1354 (Fed. Cir. 2014) (computer and Internet-based method for guaranteeing an online transaction was directed to an abstract idea); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) (the application of the claims "in the e-commerce setting do not make them any less abstract").

The claims of the '979 fail to recite any specific technology improvement and are thus critically different from what the Federal Circuit has determined to be patent eligible. For example, in *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, rather than using conventional user interface systems, the claims were directed to a "particular manner of summarizing and presenting information in electronic devices." 880 F.3d 1356, 1362 (Fed. Cir. 2018) (finding claims "disclose[d] an improved user interface for electronic devices, particularly those with small screens" and "improve[d] the efficiency of using the electronic device"). Similarly, in *Enfish, LLC*

*v. Microsoft Corp.*, the Federal Circuit found the claims patent eligible because the focus "is on the specific asserted improvement in computer capabilities," rather than "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." 822 F.3d 1327, 1335–36 (Fed. Cir. 2016). In contrast, the focus of Claim 1 is facilitating economic transactions between two parties using a third-party intermediary—"an improvement in wholly abstract ideas," rather than an improvement "in the way computers and networks carry out their basic functions." *SAP Am. Inc.*, 898 F.3d at 1168.

The focus of the '979 Patent—facilitating economic transactions between two parties using a third-party intermediary—is an abstract idea, not a patent-eligible invention. Accordingly, the Clam 1 fails the first step of the *Alice* test.

### 2.  *Alice* Step 2: The claims do not contain an inventive concept sufficient to confer patent eligibility.

Claim 1 of the '979 Patent merely applies the applicant's desired concept in a generic technological environment using conventional computer components and functions, and thus do not contain an inventive concept sufficient to confer eligibility.

The Supreme Court is clear that "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. For example, in Credit Acceptance, the claims invoked "conventional and generic computer components," including "a database, user terminal, and server." *Credit Acceptance*, 859 F.3d at 1056. The Federal Circuit confirmed that "merely 'configur[ing]' generic computers in order to 'supplant and enhance' an otherwise abstract manual process [of securing financing]" was "precisely the sort of invention that the Alice Court deemed ineligible for patenting." *Id.* at 1056. Likewise, the specification of the '979 Patent is generic and devoid of any improvement or nonconventional use of basic components.

Other Federal Circuit cases have held similar claims patent ineligible. In *Bozeman Financial LLC v. Federal Reserve Bank of Atlanta*, for example, the claims related to "a method of receiving data from two financial records, storing that data, comparing that data, and displaying the results" to "verify[] financial documents to reduce transaction fraud." 955 F.3d 971, 978 (Fed. Cir. 2020). Because the "technological components recited in [the claims] were conventional, off-theshelf computer components," the Federal Circuit held "the claims do not include an inventive concept that would otherwise render the claims eligible." *Id.* at 980–81; *see also Solutran*, *Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) ("Merely using a general-purpose computer and scanner to perform conventional activities in the way they always have, as the claims do here, does not amount to an inventive concept.").

In the same way, Claim 1 of the '979 Patent does not any non-conventional hardware or software. For example, the claims invoke the use of a "bridge computer," "web site[s]," a "communications network," "service provider computer[s]," a "database," "user device[s]," and vendor and user IDs. The '979 Patent itself describes these components as conventional. (*See, e.g.*, '979 Patent, Figure 1, 2:48-4:18 (discussing the communications network, user devices, web sites, vendor computers, service provider computers, the bridge computer and its database).) When considered both individually and as an ordered combination, these limitations do nothing more than recite the abstract idea "while adding the words 'apply it with a computer.'" *Alice*, 132 S. Ct. at 2358. And just as in *Alice*, the '979 Patent's use "of a computer to obtain data [and] adjust account balances" "do not, for example, purport to improve the functioning of the computer itself." *Id.* at 2359. The '979 Patent adds nothing to these "conventional" components.

In sum, the claims' invocation of computers adds no inventive concept, and "[t]hat a computer receives and sends [] information over a network" is not inventive. *buySAFE*, 765 F.3d

17

at 1355. The '979 Patent claims thus fail *Alice* step two, because they do not recite an inventive concept.

### 3.    The dependent claims of the '979 Patent do not alter the analysis.

The remaining claims of the '979 Patent recite the same abstract idea: facilitating economic transactions between two parties using a third-party intermediary. As a result, the dependent claims are patent ineligible for the same reasons stated above.

For example, Claim 2 recites using the bridge computer to reimburse for credit card service charge fees, Claim 3 recites crediting service providers with referral fees, Claim 4 recites collecting service charges, Claim 5 recites settling the accounts according to a predetermined schedule. All of these are subtle differences in payment terms. None of these add more to the abstract idea that the intermediary is being used to facilitate a transaction.

Like Claim 1 of the '979 Patent, the limitations in the remaining claims are directed to the same abstract idea of brokering a commercial transaction between a purchaser and a vendor using an intermediary—a long established economic practice devoid of any "inventive concept." *See Alice*, 573 U.S. at 224–26; *see also Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim").

### 4.    There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d at 1369. The court added that "[t]he

improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370.

Here, AML's Complaint contains no allegations about the inventiveness of '979 Patent, so there is nothing left to preclude a determination of ineligibility on the pleadings. Accordingly, Bath & Body Works Direct's motion is ripe, and it should be granted.

## VI.    CONCLUSION

For the foregoing reasons, Bath & Body Works Direct respectfully requests that the Court dismiss AML's Complaint for improper venue and failure to state a claim.

Dated: May 25, 2022              **FISH & RICHARDSON P.C.**

By: */s/ Lance E. Wyatt*
        Neil J. McNabnay
        Texas Bar No. 24002583
        mcnabnay@fr.com
        David Conrad
        Texas Bar No. 24049042
        conrad@fr.com
        Lance E. Wyatt
        Texas Bar No. 24093397
        wyatt@fr.com

        FISH & RICHARDSON P.C.
        1717 Main Street, Suite 5000
        Dallas, Texas 75201
        (214) 747-5070 (Telephone)
        (214) 747-2091 (Facsimile)

**COUNSEL FOR DEFENDANTS
BATH & BODY WORKS DIRECT, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 25, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Lance E. Wyatt*
Lance E. Wyatt