# EXHIBIT A

Case 4:22-cv-00216-SDJ   Document 37-1   Filed 12/19/23   Page 2 of 6 PageID #:  314

AML IP, LLC v. Bed Bath & Beyond, Inc., Not Reported in Fed. Supp. (2022)

2022 WL 1085617
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Waco Division.

AML IP, LLC, Plaintiff,
v.
BED BATH & BEYOND, INC., Defendant.

6:21-CV-00600-ADA
|
Signed 04/11/2022

**Attorneys and Law Firms**

William P. Ramey, III, Ramey & Schwaller, LLP, Houston, TX, for Plaintiff.

David Brandon Conrad, Neil J. McNabnay, Lance E. Wyatt, Jr., Fish & Richardson PC, Dallas, TX, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

ALAN D. ALBRIGHT, UNITED STATES DISTRICT JUDGE

*1 Before the Court is Defendant Bed Bath and Beyond, Inc.'s ("BB&B") Motion to Dismiss for Improper Venue and Failure to State a Claim. ECF No. 9. Plaintiff AML IP, LLC ("AML") opposes the motion. ECF No. 14. BB&B replied in support. ECF No. 17. Upon review, BB&B's motion is **DENIED**.

### I. PROCEDURAL BACKGROUND

On June 11, 2021, AML filed suit against BB&B claiming it infringed U.S. Patent No. 6,876,979 ("the Asserted Patent"). ECF No. 1 at 2. It alleges BB&B infringed the Asserted Patent—which involves methods and apparatuses for conducting electronic commerce—by facilitating purchases from vendors using a bridge computer that implements the inventions claimed in the Asserted Patent *Id.* at 2-3. It asserts that not only has BB&B infringed the Asserted Patent, but that, despite receiving notice of the patent, BB&B has continued to encourage and instruct others to infringe. *Id.* at 6. As such, AML claims BB&B's infringement is both direct and indirect. *Id.* at 7. It relies on 28 U.S.C. §§ 1331 and 1338 to establish venue and asks for damages, attorneys' fees, and either an injunction against BB&B or damages for future infringement. *Id.* at 2, 7–8. BB&B now moves to dismiss AML's claims for improper venue and failure to state a claim. ECF No. 9 at 6.

### II. FACTUAL BACKGROUND

AML claims BB&B is a corporation operating under the laws of the State of New York with a principal place of business in Waco, Texas. ECF No. 1 at 1. As for itself, AML alleges it is a limited liability company operating under Texas law with a principal place of business in Harris County, Texas. *Id.* According to AML, BB&B sells products and services throughout Texas and specifically this district, including the products and services that allegedly infringe the Asserted Patent. *Id.*

BB&B disagrees about its principal place of business—it argues that location is in New Jersey. ECF No. 9 at 8; ECF No. 9-1 at 1-2. It admits it operates retail stores and employs individuals in this district but it avers that those locations do not conduct corporate functions and those employees are not relevant to this suit. *Id.* According to BB&B, its New Jersey office houses the employees, operations, and documents related to the accused products. *Id.* Relevant to this suit, AML's allegations concern BB&B's website—according to BB&B, the servers that operate that website are located in New Jersey, North Carolina, Illinois, and Virginia. *Id.* It claims that no documents or servers are located in this district. *Id.*

The Asserted Patent is titled "Electronic Commerce Bridge System." ECF No. 1-1 at 1. Patented on April 5, 2005, it is a system and method for supporting electronic commerce in an environment in which multiple service providers have their own vendors and where users may maintain accounts separate and different from the service provider associated with the vendor from whom the user makes a purchase. *Id.* The bridge system—a computer employing the Asserted Patent—is used to facilitate those interactions and implement fees. *Id.* There are 13 claims contained in the Asserted Patent. *Id.* at 12-13.

### III. APPLICABLE LAW

**A. Motion to Dismiss: Improper Venue**

Case 4:22-cv-00216-SDJ   Document 37-1   Filed 12/19/23   Page 3 of 6 PageID #:  315

AML IP, LLC v. Bed Bath & Beyond, Inc., Not Reported in Fed. Supp. (2022)

*\*2* A case claiming patent infringement may be brought in the judicial district where the defendant (1) resides or (2) has committed acts of infringement and has a regular and established place of business. 28 U.S.C.A. § 1400(b). A case that is brought in an improper venue may be dismissed. FED. R. CIV. P. 12(b)(3). Whether venue is proper under 28 U.S.C.A. § 1400(b) is an issue unique to patent law and thus governed by Federal Circuit Precedent. *In re: ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted).

When venue is challenged, the plaintiff bears the burden to show venue is proper. *Id.* at 1013. If a defendant does not reside in a district, the plaintiff may meet its burden by showing that (1) there is a physical place in the district at issue; (2) that place is a regular and established place of business; and (3) it is the defendant's place. *Id.* at 1014. To be a regular and established place of business, the alleged 'place of business' must be a place where the defendant's employees or agents are regularly, physically, present and conduct the defendant's business. *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020).

Showing these elements, combined with an allegation that infringement occurred in the district at issue, can establish venue and allow a case to survive a motion to dismiss. *In re ZTE (USA) Inc.*, 890 F.3d at 1014; *see TMT Systems, Inc. v. Medtronic, Inc.*, 6:20-CV-0973-ADA, 2021 WL 5316411, at *2 (W.D. Tex. Oct. 19, 2021) (holding that a simple allegation of infringement, even if the defendant denies the allegation, is sufficient to establish venue). When evaluating these elements, a court should keep in mind that the patent venue statute should be read narrowly. *In re ZTE (USA) Inc.*, 890 F.3d at 1014. During its venue evaluation, the court must accept all the plaintiff's allegations as true and resolve all conflicts in the plaintiff's favor. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F.App'x 612, 615 (5th Cir. 2007) (per curiam). If the court finds venue is improper, it may either dismiss the case or transfer it to a proper district. 28 U.S.C.A. § 1406(a).

### B. Motion to Dismiss: Failure to State a Claim: Patent Eligibility

A party may move to dismiss a claim if the complaint has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. When considering a Rule 12(b)(6) motion, a court must assume that all well-pled facts are true and view them in the light most favorable to the non-moving party. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678.

#### i. The *Alice* Test

Patentability, as described in 35 U.S.C. § 101, is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Therefore, the section 101 inquiry may be properly raised in a motion to dismiss if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring).

*\*3* Courts apply a two-part test to determine whether a patent is directed to eligible subject-matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014). First, a court must determine whether the claims at issue are "directed to a patent-ineligible concept." *Id.* at 217. Laws of nature, natural phenomena, and abstract ideas are not patentable. *Id.* at 216. If the claims are directed to a patent-ineligible concept, a court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 78–79 (2012)). Step two of the analysis is "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217–18 (quoting *Mayo*, 566 U.S. at 72–73) (brackets omitted)). Step two is satisfied "when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018).

#### ii. The Presumption of Validity

Case 4:22-cv-00216-SDJ   Document 37-1   Filed 12/19/23   Page 4 of 6 PageID #: 316

AML IP, LLC v. Bed Bath & Beyond, Inc., Not Reported in Fed. Supp. (2022)

Patents granted by the United States Patent and Trademark Office are presumptively valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011) (citing 35 U.S.C. § 282). "This presumption reflects the fact that the Patent and Trademark Office has already examined whether the patent satisfies 'the prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft*, 564 U.S. at 95–96). Accordingly, the presumption of validity extends to patent eligible subject-matter. *Id.*

This presumption of validity complicates a court's § 101 eligibility analysis inevaluating a Rule 12(b) motion to dismiss. Generally, overcoming the presumption of validity requires clear and convincing evidence. *Microsoft*, 564 U.S. at 95. In the context of § 101 eligibility, the Federal Circuit has held that the second part of *Alice*'s two-step inquiry should be assessed according to the clear and convincing evidence standard. *Berkheimer*, 881 F.3d at 1368 ("Any fact, such as [whether a claim element or combination is well-understood or routine], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence.").

When analyzing a motion to dismiss, a court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the [patentee's] favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Therefore, during step two of the *Alice* analysis, after accepting all of the complaint's factual allegations as true and drawing all reasonable inferences in the patentee's favor, a court must determine whether there is clear and convincing evidence that the claim limitations are merely "well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). In other words, to prevail, the movant needs to overcome both a factual deck stacked against it and a heightened burden of proof.

Therefore, because a patent is presumed valid and requires clear and convincing evidence to prove its invalidity, a Rule 12(b) motion to dismiss is a procedurally awkward place for a court resolve a patent's § 101 eligibility.

### iii. Claim Construction

Another factor that can affect a court's § 101 analysis is claim construction. *See, e.g., MyMail, Ltd. v. ooVoo, LLC,* 934 F.3d 1373 (Fed. Cir. 2019). Claim construction is not an inviolable prerequisite to determining patent validity. *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). But the Federal Circuit has instructed that "[d]etermining patent eligibility requires a full understanding of the basic character of the claimed subject matter." *MyMail*, 934 F.3d at 1379 (citing *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("[I]t will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."). Further, claim construction can itself affect a § 101 analysis. *See, e.g., Aatrix Software*, 882 F.3d at 1128–30 (vacating the district court's Rule 12(b)(6) dismissal and ordering the district court to "resolve, as necessary, claim construction issues" on remand); *Dynamic Applet Techs., LLC v. Mattress Firm, Inc.*, No. 4:17-CV-860-ALM-KPJ, 2018 WL 5306647, at *6–7 (E.D. Tex. Aug. 29, 2018), report and recommendation adopted, No. 4:17-CV-860-ALM-KPJ, 2018 WL 4456820 (E.D. Tex. Sept. 18, 2018) ("In order for the Court to determine whether the patents contain an inventive concept, it is necessary for there to be a settled interpretation of the claim language.").

*4 Therefore, because claim construction can affect—and in most cases, will affect—a court's § 101 eligibility analysis, the Court believes that it is generally wiser and more efficient to wait to determine a patent's § 101 eligibility until after issuing its claim construction order.

### iv. Fact discovery

Insufficient discovery can also affect a court's validity analysis because "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369. Thus, like claim construction, fact discovery can affect a § 101 analysis. *See, e.g., Cronos Techs., LLC v. Expedia, Inc.*, No. 13-1538-LPS, 2015 WL 5234040, at *3 (D. Del. Sept. 8, 2015) (denying without prejudice motion for judgment on the pleadings of ineligibility of claims generally disclosing methods and systems for remote ordering of products).

Therefore, resolving § 101 eligibility of all asserted claims almost certainly requires fact discovery. And because fact discovery does not begin until after claim construction under

Case 4:22-cv-00216-SDJ Document 37-1 Filed 12/19/23 Page 5 of 6 PageID #: 317

AML IP, LLC v. Bed Bath & Beyond, Inc., Not Reported in Fed. Supp. (2022)

the Court's default Order Governing Proceedings, the Court generally believes it is wiser and more efficient to wait to determine a patent's § 101 eligibility until after fact discovery has at least opened.

### v. The difficulty of applying the *Alice* test

The *Alice* test is a difficult test to apply and yields inconsistent results. This lack of predictability and consistency is widely known and extremely problematic. These inherent problems come into play when an abstract idea is potentially involved. As Judge Linn explained in 2017:

> The narrow character of the law of nature and natural phenomenon exceptions is relatively self-evident, but the contours of the abstract idea exception are not easily defined. For that reason, the abstract idea exception is almost impossible to apply consistently and coherently.... The problem with [the *Alice*] test, however, is that it is indeterminate and often leads to arbitrary results. Moreover, if applied in a legal vacuum divorced from its genesis and treated differently from the other two exceptions, it can strike down claims covering meritorious inventions not because they attempt to appropriate a basic building block of scientific or technological work, but simply because they seemingly fail the Supreme Court's test.

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1377 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part). The courts have been reduced to an "I know it when I see it" style of analysis. *McRo, Inc. v. Sony Computer Ent. Am., LLC*, 55 F. Supp. 3d 1214, 1220 (C.D. Cal. 2014), *rev'd and remanded*, 837 F.3d 1299 (Fed. Cir. 2016) (quoting *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964)). Unsurprisingly, given this lack of guidance, courts have struggled to determine what qualifies as an abstract idea and need as much assistance as possible.

Even what seem like small technical details could loom large in the final eligibility analysis because there is often only a very thin line between a patent that is directed at an abstract idea and a patent that is directed to improving, for example, a computer program or system. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). By delaying the § 101 determination, a court can spend more time with the patents during claim construction, motions to strike contentions, discovery disputes, and even motions for summary judgment.

### IV. ANALYSIS

#### A. Motion to Dismiss for Improper Venue

**\*5** BB&B argues the Western District of Texas ("WDTX") is not a proper venue for this suit for two reasons. ECF No. 9 at 13. First, it asserts it does not reside in the WDTX. *Id.* Second, while it concedes that it does have a regular and established place of business in the WDTX, it claims it has not committed acts of infringement here and thus venue cannot be established. *Id.* at 14.

In its response, AML does not dispute BB&B's claim that it does not reside in the WDTX. It does, however, argue that BB&B has a regular and established place of business in the WDTX and has committed acts of infringement here. ECF No. 14 at 5. As BB&B conceded it has a regular and established place of business in the WDTX, the only issue the Court need resolve is whether AML has sufficiently alleged that BB&B committed an act of infringement here.

Since this is a motion to dismiss, the Court must accept all of AML's allegations as true and resolve all conflicts in its favor. *Braspetro Oil Servs. Co.*, 240 F.App'x at 615. At this stage, a simple allegation of infringement is sufficient to support a claim, regardless of whether BB&B denies it. *TMT Systems, Inc.*, 2021 WL 5316411, at \*2; *see also Seven Networks, LLC v. Google, LLC*, 315 F.Supp.3d 933, 946 (E.D. Tex. 2018) (finding that an allegation that the infringer practiced one step of the infringing method in the district, even if the act was not tied or related to the infringer's regular and established place of business in the district, can be enough to establish venue); *see also Stiegele v. Jacques Kreisler Mfg. Corp.*, 213 F.Supp. 494, 496 (S.D. N.Y. 1962) (holding that the test used to determine whether patent infringement occurred for purposes of venue is less strict than when the case is tried on the merits).

Case 4:22-cv-00216-SDJ   Document 37-1   Filed 12/19/23   Page 6 of 6 PageID #: 318

AML IP, LLC v. Bed Bath & Beyond, Inc., Not Reported in Fed. Supp. (2022)

Here, AML alleges that BB&B used, sold, and introduced products and services in the WDTX that infringed the Asserted Patent—specifically by maintaining, operating, and administering "payment products and services that facilitate purchases from a vendor using a bridge computer that infringes ... [the Asserted Patent]." ECF No. 1 at 1, 3. BB&B spills much ink disputing that claim and attempts to prove that it could not have infringed the patent in the WDTX. ECF No. 9 at 14-16. But this is not the time for a balancing test or a merits decision—whether BB&B *actually* infringed is a question for another day. AML's allegation that BB&B infringed in this district is enough to survive this motion to dismiss. AML has thus overcome its burden and established that venue is proper in the WDTX. BB&B's motion to dismiss for improper venue is **DENIED**.

### B. Motion to Dismiss for Failure to State a Claim: Patent Eligibility

BB&B next argues that AML has not alleged a plausible infringement claim because the Asserted Patent's claims are ineligible under 35 U.S.C. § 101. ECF No. 9 at 17. If the patent is ineligible, BB&B asserts AML's complaint should be dismissed. *Id.* According to BB&B, Claim 1 of the Asserted Patent is an abstract idea that does not contain an inventive concept and is thus unpatentable under the *Alice* test. *Id.* at 17, 22. In its eyes, Claim 1 of the Asserted Patent is simply generic and only directed to the idea of organizing human activity and involving fundamental economic practices—specifically, the practice of using an intermediary in an economic transaction—without reciting any technological improvement in the way the intermediary, here the bridge computer, functions. *Id.* at 12, 17. It maintains the Asserted Patent's other claims are similarly ineligible. *Id.* at 24.

**\*6** AML responds that the Asserted Patent's claims are directed at unconventional, concrete steps that teach a solution that was unavailable before this patent to solve a problem specific to e-commerce—namely, allowing a customer to purchase from a vendor without registering with that select vendor. ECF No. 14 at 9, 12. It distinguishes the Asserted Patent's solutions from a situation where a computer is an added element used only to automate what was done manually before. *Id.* at 14. It also argues that the Asserted Patent has inventive concepts and factual allegations that preclude dismissal at this state. *Id.* at 19-23.

This Court typically reserves its ruling on patent eligibility for a later stage of litigation. BB&B filed its motion prior to claim construction and the close of discovery. But BB&B asks the Court to resolve the issue now, contending that there are no claim construction issues or factual disputes present that would impede the Court's analysis. *Id.* AML does not ask the Court to delay the patent eligibility issue either, and instead presents lengthy arguments for why the Asserted Patent's claims are patentable. ECF No. 14 at 9–13. AML does not, however, concede that there are no claim construction issues or factual disputes here. *Id.* At first glance, those issues plausibly exist—the parties seem disagree what exactly Claim 1 of the Asserted Patent does. *Comp.* ECF no. 9 at 18-20 *and* ECF No. 14 at 17-19. And there seems to at least be some sort of dispute over whether BB&B rebutted all factual allegations in AML's complaint. *Comp.* ECF No. 14 at 20, 22 *and* ECF No. 17 at 6.

Because an issued patent enjoys the presumption of validity, which requires clear and convincing evidence to prove otherwise, and claim construction and fact discovery can completely change the Court's § 101 analysis, the Court believes that delaying the determination of a patent's § 101 eligibility is the wisest course of action. Therefore, BB&B's motion to dismiss for failure to state a claim is **DENIED**.

This order does not preclude BB&B from refiling its § 101 motion, if it chooses, after the Court issues a claim construction order. Should BB&B elect to refile its motion at that time, the Court orders it to brief the patent ineligibility of each asserted claim, *i.e.*, not just representative claims.

### V. CONCLUSION

Accordingly, the Court finds that the WDTX is a proper venue for this matter and reserves the issue of the eligibility of the Asserted Patent for a later time. Defendant BB&B, Inc.'s Motion to Dismiss for Improper Venue and Failure to State a Claim, (ECF No. 9), is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 1085617

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.