UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AML IP, LLC | § | |
| | § | |
| v. | § | |
| | § | |
| BATH & BODY WORKS DIRECT, INC. | § | CIVIL NO. 4:22-CV-216-SDJ |
| | § | LEAD CASE |
| | § | |
| BIG LOTS STORES, LLC | § | CIVIL NO. 4:22-CV-223-SDJ |
| | § | |
| THE BUCKLE, INC. | § | CIVIL NO. 4:22-CV-225-SDJ |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are three motions to dismiss, filed by Defendants The Buckle, Inc., Bath & Body Works Direct, Inc., and Big Lots Stores, LLC, respectively. (Dkt. #25, #28, #31). Plaintiff AML IP, LLC ("AML") filed responses in opposition, (Dkt. #26, #29, #32), and Defendants filed replies, (Dkt. #27, #30, #33). The Court held a hearing on the motions, (Dkt. #44), after which AML filed a supplemental response, (Dkt. #45), and Defendants responded, (Dkt. #46). Having considered the motions, the arguments presented by the parties, and the relevant law, the Court concludes that the motions should be **GRANTED**.

**I. BACKGROUND**

AML is the owner of U.S. Patent No. 6,876,979 (the "'979 patent"), which is titled "Electronic Commerce Bridge System." According to AML, the '979 patent "relates to novel and improved methods and apparatuses for conducting electronic commerce." (Dkt. #1 ¶ 8). The abstract states the following:

>Systems and methods are provided for supporting electronic commerce in an environment in which multiple service providers each have associated vendors and in which a user may maintain an account at a service provider that is different from the service provider associated with the vendor from which a user makes an on-line purchase. Both tangible products and electronic content products may be sold using the system. A bridge computer may be used to facilitate interactions between service providers. The bridge computer may be used to implement service charge fees, to reimburse service providers for credit card transaction fees, to reimburse service providers with appropriate referral fees, and to otherwise support operation of the system.

(Dkt. #1-2 at 1).

The background of the '979 patent describes the state of the prior art, in which "[s]ervice providers associated with Internet portal sites" allowed users to establish a single account that the user can use to "shop at multiple vendors without having to establish" an account with each vendor. '979 patent col. 1 ll. 13–17. A problem arises, however, because "there are many competing service providers. As a result, users who desire to shop at a vendor that is not associated with a service provider at which they have already established an account are faced with the task of establishing additional user accounts. This is burdensome on the users and discourages purchases." '979 patent col. 1 ll. 20–26. The object of the invention described in the '979 patent is to "provide e-commerce systems that allow users to shop at vendors associated with different service providers without having to establish multiple service provider accounts." '979 patent col. 1 ll. 27–31. And, according to the '979 patent, it achieves that through the use of a "bridge computer," with which "service providers may register," and that "may act as a clearinghouse for transactions, so that rival service providers need not interact directly with one another." '979 patent col. 1 ll. 47–49, col. 6 ll. 33–34.

Claim 1 of the '979 patent—which AML acknowledges is representative of the other claims—recites the following:

> 1. A method for using an electronic commerce system having a bridge computer to allow a user at a user device to make a product purchase at a purchase price from a given vendor having a web site provided by a vendor computer over a communications network, wherein the vendor is associated with at least one of a plurality of service providers wherein each of the plurality of service providers has a service provider computer, and wherein the user has a user account maintained by at least one of the plurality of service providers, the method comprising:
>
> debiting the user's account by the purchase price when the user purchases the product from the given vendor;
>
> determining from among the plurality of service providers, using the bridge computer, whether the given vendor is associated with the same service provider with which the user's account is maintained or is associated with a different service provider; and
>
> if the service provider with which the user's account is maintained is the same as the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the user's account at that same service provider and, if the service provider with which the user's account is maintained is different from the service provider with which the vendor is associated, crediting the given vendor by the purchase price using funds from the service provider with which the vendor is associated and using the bridge computer to reimburse that service provider with the purchase price using funds from the user's account.

'979 patent col. 10 ll. 24–54.

Pursuant to the parties' qualified agreement at the oral hearing on Defendants' Motions to Dismiss, the Court accepts the following claim constructions: (1) "bridge computer" means "a computer that supports electronic commerce between users, vendors, and service providers, and is distinct from the service provider computer"; (2) "vendor computer" carries its plain and ordinary meaning; (3) "service provider computer" means "service provider computer that is distinct from the bridge

computer"; (4) "debiting the user's account" means "debiting the user's account by the bridge computer"; (5) "associated with a different service provider" carries its plain and ordinary meaning; and (6) "crediting the given vendor" means "crediting the given vendor by the bridge computer."[1]

AML alleges that Defendants "maintain[], operate[], and administer[] payment products and services that facilitate purchases from a user using a bridge computer that infringes one or more of claims 1–13 of the '979 patent." (Dkt. #1 ¶ 9). AML also contends that Defendants are liable for induced or contributory infringement of the '979 patent for encouraging others to use their services and instructing them on how to do so. Defendants now move to dismiss AML's claims for improper venue and for failure to state a claim upon which relief can be granted. The Court will first address venue and then consider whether the '979 patent claims a patentable invention under 35 U.S.C. § 101.

## II. Venue

A case that is brought in an improper venue may be dismissed. Fed. R. Civ. P. 12(b)(3). In a patent case, venue is proper only "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265, 137 S.Ct. 1514, 197 L.Ed.2d 816 (2017). Whether venue is proper under 28 U.S.C. § 1400(b) is an

---

[1] These constructions come from *AML IP, LLC v. Bed Bath & Beyond Inc.*, 6:21-CV-600 (W.D. Tex.) (Albright, J.), a case concerning the same patent at issue here. The parties agreed to these claim constructions for purposes of the Court's consideration of the Motions to Dismiss.

issue unique to patent law and is thus governed by Federal Circuit precedent. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018). The Federal Circuit has made clear that Section 1400(b) is "intended to be restrictive of venue" and that it "should not be liberally construed in favor of venue." *Id.* at 1014 (quoting *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969)).

When venue is challenged, the plaintiff bears the burden to show that venue is proper. *Id.* at 1014. To establish venue under Section 1400(b)—as AML attempts here—the plaintiff must show that (1) there is a physical place in the district; (2) the place is a regular and established place of business; and (3) it is the defendant's place. *Id.* Section 1400(b) also requires the plaintiff to show that the defendant "has committed acts of infringement" in the district. "Acts of infringement" include making, using, offering to sell, or selling a patented invention without authorization. 35 U.S.C. § 271(a). Here, AML's allegations of infringement are premised on Defendants' use of the patented method. (Dkt. #1 ¶ 9) ("Defendant puts the inventions claimed by the '979 patent into service (i.e., used them) . . . .)."

Defendants argue that AML has not alleged that Defendants perform each step of the patented method in this district, and, therefore, it failed to allege that they use the patent in this district. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("A method or process consists of one or more operative steps, and, accordingly, it is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized." (cleaned up)), *abrogated on other grounds by Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc). Accordingly, Defendants aver that AML has not alleged that they

committed the necessary acts of infringement in this district for venue to be proper, since the alleged acts of infringement are Defendants' use of the method.

In *NTP*, the Federal Circuit explained that a defendant does not "use" a patented method "within" the United States such that the plaintiff has a viable claim under Section 271(a) "unless each of the steps is performed within this country." 418 F.3d at 1318; *see generally* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent."). Since "the use of a process necessarily involves doing or performing each of the steps recited," a method is only used within a location if each step is performed in that location. *NTP*, 418 F.3d at 1318; *see also id.* (holding that plaintiff did not have a viable claim under Section 271(a) because one step was performed outside of the United States).

Although *NTP* concerned Section 271(a), the same reasoning should apply to Section 1400(b), as both statutes consider the location of the alleged infringement. *Compare* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent.") *with* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought . . . where the defendant has committed acts of infringement and has a regular and established place of business."). Applying *NTP*'s reasoning to the Section 1400(b) context, it follows that a defendant does not use a method or process in a judicial district unless each of the steps is performed within that district.

Here, AML's allegations of infringement center on use. Although AML alleges that certain steps of the alleged infringement occur in this district, it does not allege

that *all* of the steps take place here. Nor does it challenge Defendants' declarations that their data centers—which operate the allegedly infringing websites—are located outside of this district. (Dkt. #25-1 ¶¶ 9–10) ("Buckle does not own, operate, lease, or control any data centers that operate www.buckle.com in the Eastern District of Texas. The Buckle's . . . website is primarily operated from servers at data centers located in Virginia."); (Dkt. #28-1 ¶¶ 9–10) (declaration of Bath & Body Works Direct's declarant to the same effect);  (Dkt. #31-1 ¶¶ 9–10) (declaration of Big Lots's declarant to the same effect).[2] But use—the alleged act of infringement here—only occurs when and where each step of the method is performed. Because AML does not allege that each step was performed in this district, and likewise does not controvert Defendants' declarations that certain steps are not performed in the district, it has failed to establish that Defendants committed an act of infringement (i.e., used its patented method) in the district. Therefore, AML has failed to establish that venue is proper as to any Defendant. For this reason alone, the case should be dismissed.

---

[2] When considering a motion to dismiss for improper venue, courts "may consider evidence in the record beyond the facts alleged in the [complaint] and its attachments, including affidavits or evidence submitted by [the defendant] in support of its motion to dismiss, or by [the plaintiff] in response to the motion." *Estrello v. United States*, No. 4:22-CV-765, 2023 WL 3689999, at *2 (E.D. Tex. Apr. 28, 2023) (cleaned up), *report and recommendation adopted*, 2023 WL 3687359 (E.D. Tex. May 26, 2023) (Jordan, J.); *see also Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) ("[U]nder . . . Rule 12(b)(3),  the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." (cleaned up)); *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-1001, 2022 WL 1241967, at *6 (W.D. Tex. Apr. 26, 2022) ("The trend among circuit courts is to accept well-pleaded facts 'only to the extent that such facts are uncontroverted by [a] defendant's affidavit.'" (quoting *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)); *Lonrho PLC v. Starlight Invs., LLC*, No H-11-02939, 2012 WL 256421, at *2 (S.D. Tex. Jan. 27, 2012) ("The court may consider extrinsic evidence when considering [a Rule 12(b)(3)] motion.").

### III. PATENT ELIGIBILITY

#### A.  Rule 12(b)(6)

Patent eligibility under 35 U.S.C. § 101 can often be resolved on a motion to dismiss. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("*Berkheimer I*"). When a Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the eligibility of a patent, courts apply the same, well-known standard that applies to all Rule 12(b)(6) motions. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018) (Moore, J., concurring in denial of rehearing en banc).

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). This involves a two-step inquiry. First, courts assess the allegations of the complaint and distinguish well-pleaded factual allegations from unsupported legal conclusions. *Id.* The complaint need not lay out its factual allegations in significant detail, but it must be enough that, when accepted as true, the allegations suggest that the plaintiff's right to recovery is more than just speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and courts need not assume the truth of legal conclusions framed as allegations. *Id.*

Second, courts must "ask whether the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility threshold." *Waller*, 922 F.3d at 599 (cleaned up). In other words, courts determine whether the complaint's factual

allegations establish more than just a possibility of the plaintiff's success on its claims. *Id.* Making this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## B. The *Alice/Mayo* Test

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." However, the Supreme Court has long held that Section 101 contains an implicit exception to patent eligibility for claims directed toward laws of nature, physical phenomena, and abstract ideas. *Diamond v. Chakrabarty*, 447 U.S. 303, 309, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980); *accord Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013). Relevant here, "[t]he abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113, 15 How. 62, 14 L.Ed. 601 (1853)). In other words, "[a] patent is not good for an effect, or the result of a certain process because such patents would prohibit all other persons from making the same thing by any means whatsoever." *Id.* (internal quotation marks omitted) (quoting *Le Roy v. Tatham*, 55 U.S. 156, 175, 14 How. 156, 14 L.Ed. 367 (1852)). Courts must "therefore look to whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead

directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.*

The abstract-idea exception, "is not without limits," though, "for 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas,' and 'too broad an interpretation of this exclusionary principle could eviscerate patent law.'" *Ass'n for Molecular Pathology*, 569 U.S. at 589–90 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012)). Thus, "[w]hether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer I*, 881 F.3d at 1368.

To aid courts in making this determination, the Supreme Court has established a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible *applications* of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) (emphasis added); *see also Mayo*, 566 U.S. at 77. First, courts must determine whether the claims are directed to a patent-ineligible concept. *Alice*, 573 U.S. at 217. If so, courts must determine whether there are additional elements beyond the patent-ineligible concept that "transform the nature of the claim" into a patent-eligible application. *Id.* (citation omitted).

**C.  *Alice/Mayo* Step One: Whether Claim 1 is Directed to an Abstract Idea**

**1.**

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents*

*Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*Affinity Labs I*") (stating that the first step "calls upon us to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter" (cleaned up)). In conducting this analysis, courts should not oversimplify key inventive concepts or downplay an invention's benefits. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337–38 (Fed. Cir. 2016); *see also McRO*, 837 F.3d at 1313 ("[C]ourts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." (quotation omitted)). Moreover, "it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

Abstract ideas, which are unpatentable, "are products of the mind, mental steps, not capable of being controlled by others, regardless what a statute or patent claim might say." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1375 (Fed. Cir. 2018) ("*Berkheimer II*") (Lourie, J., concurring in denial of rehearing en banc) (citing *Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972)). In the context of software applications, the dichotomy between patentable concrete ideas and unpatentable abstract ideas typically turns on whether the patent is directed to "an improvement in the functioning of a computer," which is patentable, or to a method that simply adds "conventional computer components to well-known business practices" or that recites "generalized steps to be performed on a computer using

conventional computer activity," which is unpatentable. *Enfish*, 822 F.3d at 1338; *see also Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1361 (Fed. Cir. 2020) (holding that a patent must improve the computer's functionality rather than merely improve the experience of users who cannot or would rather not themselves use programming to improve their experience); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding that, while the claim on its face recited "concrete, tangible components such as 'a telephone unit' and a 'server,' the specification ma[de] clear that the recited physical components merely provide[d] a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner").

### 2.

The Court concludes that claim 1 of the '979 patent is directed to the abstract idea of facilitating economic transactions between two parties using a third-party intermediary.[3] Claim 1 is strikingly similar to the claim the Supreme Court considered in *Alice*. The patents at issue there "relate[d] to a computerized scheme for mitigating 'settlement risk'—*i.e.*, the risk that only one party to an agreed-upon financial exchange will satisfy its obligation. In particular, the claims [were] designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary." *Alice*, 573 U.S. at 213. The Court held that the claims were "drawn to the concept of intermediated settlement" (or "clearing house"),  a "fundamental economic practice long prevalent in our system of

---

[3] The Court agrees with AML that claim 1 of the '979 patent is independent, and that claims 2–13 depend from claim 1. Therefore, as AML acknowledges in its responses to Defendants' motions, claim 1 is representative.

12

commerce" and a "building block of the modern economy." *Id.* at 219–20 (cleaned up). As such, the Court held that the claims fell "squarely within the realm of 'abstract ideas'" and were unpatentable. *Id.* at 220–21; *see also Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1350 (Fed. Cir. 2021) (explaining that, under *Alice*, "the use of a third-party intermediary in a financial transaction [is] an ineligible abstract idea").

The elements of claim 1 offer no meaningful distinction to the claims in *Alice*. They describe a concept for facilitating settlement using a bridge computer—a third-party intermediary. Specifically, the claim lays out the process of a buyer's online purchase from a seller and a bridge computer's processing of the purchase by either (1) debiting the buyer's account and crediting the seller's account if the seller and buyer are associated with the same service provider, or (2) crediting the seller with funds from the service provider with which the seller is associated and reimbursing that service provider from the buyer's account if the seller and buyer are associated with different service providers. *See* '979 patent col. 10 ll. 24–55. The plain object of these steps is to establish a process of facilitated electronic commerce ("e-commerce") transactions, as the background of the patent explicitly states. *See* '979 patent col. 1 ll. 27–31 ("It is an object of the present invention to provide e-commerce systems that allow users to shop at vendors associated with different service providers without having to establish multiple service provider accounts.").

The fact that claim 1 implements a bridge computer to make the process more efficient does not save claim 1 from targeting an abstract concept. Claim 1 merely uses a bridge computer to automate a human process, and nothing in claim 1

indicates that it is directed to an improvement to the technology itself. Rather, as AML admits, claim 1 "is directed to an improvement to an e-commerce system"—a system of buying and selling—"using a bridge computer." (Dkt. #26 at 19); (Dkt. #29 at 19); (Dkt. #32 at 19).

In its briefing and at the hearing on the motions to dismiss, AML has urged the Court to "tak[e] the claim as a whole" and consider the abstract so that the Court could best "understand the problem facing the inventor and, ultimately, what the patent describes as the invention." (Dkt. #26 at 10); (Dkt. #29 at 10); (Dkt. #32 at 10). AML correctly asserts that courts evaluate "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." (Dkt. #26 at 10); (Dkt. #29 at 10); (Dkt. #32 at 10). The focus of the claim when taken as a whole, according to AML, is the "use of a bridge computer in an electronic commerce system to facilitate purchases from multiple vendors using multiple service providers." (Dkt. #26 at 10); (Dkt. #29 at 10); (Dkt. #32 at 10). AML further argues that "this is not a case where a computer is an added element to automate what was done manually before, rather Plaintiff's claimed invention is directed at a solution to a problem unique to e-commerce." (Dkt. #26 at 14); (Dkt. #29 at 14); (Dkt. #32 at 14).

Even taking the claim as a whole and considering it in the context of e-commerce transactions, the Court concludes that claim 1 does not survive the first step of the *Alice* test. As the Court has explained, the abstract idea the claim seeks to patent is the facilitation of economic transactions between two parties using a third-party intermediary. It is of no moment that the transactions are occurring over the

Internet, as "limiting the use of an abstract idea 'to a particular technological environment'" is "not enough for patent eligibility." *Alice*, 573 U.S. at 223 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010)). And the patent itself acknowledges the existence of all relevant technology and does not claim that it is improving the functionality of any of it. *See* '979 patent col. 1 ll. 34–44. While the patent may make online transactions (an abstract idea) more efficient or more convenient, it does so not through a "specific asserted improvement in computer capabilities," but merely by invoking a bridge computer (pre-existing technology) "as a tool." *Enfish*, 822 F.3d at 1335–36; *see id.* at 1336 (holding that claims were not directed to an abstract idea when the "plain focus of the claims [was] on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity").

In sum, the '979 patent "simply recite[s] conventional actions in a generic way" (e.g., receiving a transaction request, inquiring whether the buyer and seller are associated with the same service provider, and transferring funds) and "do[es] not purport to improve any underlying technology." *Universal Secure Registry*, 10 F.4th at 1349 (cleaned up). For these reasons, the Court concludes that claim 1 is directed to an abstract idea.

### D. *Alice/Mayo* Step Two: Whether Claim 1 Supplies an Inventive Concept

### 1.

Because the Court concludes that claim 1 is directed to an abstract idea, the Court must next determine whether an element of the claim or a combination of elements "is sufficient to ensure that the patent in practice amounts to significantly

more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). The Supreme Court describes step two "as a search for an 'inventive concept.'" *Id.* As part of this inquiry, courts look to both the claims and the specification, though each claim element is considered individually, not in combination as in step one. *See Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs II* ") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). However, "it is not enough just to disclose the improvement in the specification; instead, the Court's task becomes to 'analyze the asserted claims and determine whether they capture these improvements.'" *Align Tech., Inc. v. 3Shape A/S*, 339 F.Supp.3d 435, 443 (D. Del. 2018) (emphasis omitted) (quoting *Berkheimer I*, 881 F.3d at 1369); *see also RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims."); *Alice*, 573 U.S. at 221 ("[W]e must examine the elements of the claim to determine whether it contains an 'inventive concept.'"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

Also, in determining inventiveness, courts often analyze whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 225). "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept," *Alice*, 573 U.S. at 222 (cleaned up), but an inventive combination of conventional

limitations may supply an inventive concept, *see Bascom Glob. Internet Servs.*, 827 F.3d at 1349. Where there is no question on the face of the pleadings that each claim element or ordered combination of elements is well-understood, routine, and conventional, patent eligibility may be resolved on a motion to dismiss. *Berkheimer I*, 881 F.3d at 1368. But, when there exists a question as to "[w]hether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," such question is a "question of fact." *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F.App'x 989, 995 (Fed. Cir. 2018) (quoting *Berkheimer I*, 881 F.3d at 1368); *see also Aatrix*, 882 F.3d at 1128 ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination.").

### 2.

Here, AML argues that "the primary improvement over the prior art mentioned in the patent specification is a claimed improvement, namely use of a bridge computer in an electronic commerce system to facilitate purchases from multiple vendors using multiple service providers." (Dkt. #26 at 22); (Dkt. #29 at 22); (Dkt. #32 at 22) (all cleaned up). The facilitation of transactions using a third-party intermediary, however, remains an abstract idea—even if the transactions occur over the Internet. AML's claimed improvement over the prior art merely involves using a bridge computer to redress the inconvenience users face when they would otherwise have to create another service provider account. *See* '979 patent col. 1 ll. 27–31. But "[s]tating an abstract idea while adding the words 'apply it with a computer' simply

combines those two steps, with the same deficient result. Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." *Alice*, 573 U.S. at 223 (cleaned up); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention significantly more than that ineligible concept." (quotation omitted)); *Bascom Glob. Internet Servs.*, 827 F.3d at 1349 ("An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer."). Thus, claim 1 does not contain an inventive concept.

AML's reliance on *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, is unavailing. No. 14-732, 2015 WL 1744343 (D. Del. Apr. 15, 2015). There, the court held that a claim for a "method that enables a device that ordinarily cannot send a message to a different device to do so" was directed to an abstract idea. *Id.* at *4. However, the court determined that the claim included a sufficient inventive concept to render it patent-eligible because it was "firmly rooted in technology and [was] addressed to a specific problem arising in the realm of mobile device-to-Internet communication." *Id.* at *6. Whereas, "[c]onventionally, phones could not send SMS text messages to computers[,] [t]he claimed method manipulates that interaction by translating the message in a way that allows the computer to receive and understand the message." *Id.* at *5. Thus, the invention was a "technological innovation" that allowed communication "where it would otherwise be impossible." *Id.* at *5.

18

AML likens its claim to the one at issue in *Messaging Gateway Solutions*, arguing that the "claims here are directed as a whole to a specific problem arising in the realm of electronic commerce with multiple vendors using multiple service providers." (Dkt. #26 at 24); (Dkt. #29 at 24); (Dkt. #32 at 24) (all cleaned up). However, unlike the invention in *Messaging Gateway Solutions*, claim 1 offers no "technological innovation." As explained above, claim 1 merely uses a bridge computer to facilitate transactions more conveniently. But the technology contemplated in the patent—namely, web sites, bridge computers, vendor computers, and service provider computers—were all conventional at the time. *See* '979 patent col. 1 ll. 6–45. And, importantly, claim 1 does not claim to improve any of this technology. Thus, there is no "technological innovation," and claim 1 did not make the impossible possible, unlike the invention in *Messaging Gateway Solutions*.

As the foregoing makes clear, the '979 patent adds no inventive concept to the abstract idea of facilitating transactions using a third-party intermediary. The fact that the patent incorporates a bridge computer and is specifically directed to e-commerce does not alter this conclusion. *See Bascom Glob. Internet Servs.*, 827 F.3d at 1349 ("An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer."). Nor do the elements, when considered as an "ordered combination," supply an adequate inventive concept. The ordered combination of the elements of claim 1 consists of generic human functions (e.g., buying and selling) and conventional technology carrying out conventional functions (e.g., a bridge computer analyzing whether a user

is associated with the same service provider as the vendor, a bridge computer debiting the user's account and crediting the vendor's account). And the only alleged improvement over the prior art provided by the ordered combination stems from the automation of a historically human process (connecting a user's account with a vendor's account). *See* '979 patent col. 1 ll. 27–31 ("It is an object of the present invention to provide e-commerce systems that allow users to shop at vendors associated with different service providers without having to establish multiple service provider accounts."). But automation of this process using conventional technology does not make it patentable—even if it makes the process more convenient and efficient. Accordingly, claim 1 fails to supply an inventive concept sufficient to convert claim 1 into a claim over a patentable subject matter.

*   *   *

Because claim 1 of the '979 patent is directed to an abstract idea and does not contain an inventive concept sufficient to transform it into a patent-eligible claim, claim 1 is invalid under 35 U.S.C. § 101. And since claim 1 is representative, AML's remaining, dependent claims for direct infringement also fail. *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 n.9 (Fed. Cir. 2016) ("Addressing each of the asserted claims is unnecessary when all the claims are substantially similar and linked to the same abstract idea." (cleaned up); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .").

Likewise, where a plaintiff has not adequately pleaded an underlying act of direct infringement, theories of indirect infringement must be dismissed. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 & n.3, 134 S.Ct. 2111, 189 L.Ed.2d 52 (2014) (explaining that "inducement liability may arise if, but only if, there is direct infringement," and declining to distinguish contributory infringement and inducement "for these purposes" because they "spring from common stock" (cleaned up)); *In re Bill of Lading*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004)). Because the Court has dismissed AML's direct infringement claims, the contributory and induced infringement claims cannot survive.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' Motions to Dismiss, (Dkt. #25, #28, #31), are **GRANTED**. Plaintiff's claims are hereby **DISMISSED**.

**So ORDERED and SIGNED this 13th day of August, 2024.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE